## HALE, AYER & CO. *v.* B., C. R. & N. R. CO.

### (*Circuit Court, D. Iowa.* October, 1881.)

1. **MECHANIC'S LIEN—WHEN NOT WAIVED BY TAKING SECURITY.**

   The holder of a claim for labor or materials for a building, erection, or improvements upon land does not waive his right to a mechanic's lien by taking security upon the same contract and upon the same property unless it appear affirmatively that it was his intention to look to such security and not to his mechanic's lien.

2. **SAME—SECURITY TO BE UPON THE IDENTICAL PROPERTY.**

   The taking of bonds secured by a mortgage on "all the franchises, fuel, rolling stock, cars, engines, machinery, and appurtenances appertaining or belonging to" a single division of a railroad line which embraces four different divisions, as collateral security for a mechanic's lien claimed upon "building, erection, or other improvement, including any work of internal improvement" on the entire line of road including the four divisions, is not equivalent to taking security upon the identical property upon which the mechanic's lien is sought to be enforced.

3. **FORECLOSURE—PURCHASER AT SALE PROTECTED BY THE RECORD.**

   Where, in a suit to foreclose a mortgage, brought against a railroad company, third parties intervene and seek to enforce a claim for materials furnished or used in the construction of the roadway, against the earnings of the road in the hands of the receiver, and without claiming a mechanic's lien, the purchaser at the foreclosure sale is not bound to look beyond what appears upon the face of the record, and anticipate a future claim for a mechanic's lien in case the earnings of the road should not satisfy the claim of intervenors.

*Hubbard & Clark,* for complainants.

*James Grant* and *J. Tracy,* for respondents.

McCRARY, C. J.   The complainants bring this suit for the purpose of establishing and enforcing a mechanic's lien against the lines of railway now run and operated by the defendant, the Burlington, Cedar Rapids & Northern Railway Company, the main line extending from Burlington, Iowa, to Postville, Iowa; the Pacific division extending from Vinton to Traer; the Muscatine division extending from Muscatine to Riverside; and the Milwaukee extension from Linn to Postville.   A lien is also claimed upon the rolling stock of said road, upon the right of way, road-bed, station-houses, car and engine-houses, machine-shops, and all property or things whatsoever belonging or in any way appertaining to said lines of railway.   It appears in proof that the plaintiffs, who are iron merchants at Chicago, Illinois, during the year 1873, and between the first of March and the last of December of said year, sold and delivered to the Burlington, Cedar Rapids & Minnesota Railway Company, then owning and

operating said lines, material for use in the construction and repair of its lines, or some of them, as shown by the bill set out as a part of the petition in this case; that in May, 1875, proceedings were commenced to foreclose certain mortgages upon the said Burlington, Cedar Rapids & Minnesota Railway, and for the appointment of a receiver thereof.

In that case the complainants, Hale, Ayer & Co., filed their petition of intervention, wherein they prayed that the court would order the receiver of said railway to pay their said claim out of the earnings of said railway, but not claiming a mechanic's lien.

Such proceedings were had in the foreclosure cases that at the October term, 1875, of this court a decree was rendered and the sale of the railway was ordered, subject, however, to the claims of parties who had intervened in the case, including the said Hale, Ayer & Co. From the said decree an appeal was prosecuted to the supreme court of the United States, where it was held that the intervenors (plaintiffs herein) were entitled to payment out of the earnings of the road of so much of their claim as was shown to be in the nature of supplies, but that for all that part which was for construction, they were not entitled to payment from such earnings. After the decree in the court below, and pending said appeal, these proceedings were instituted under the statute of Iowa for the purpose of enforcing a mechanic's lien for so much of the claim as was for materials furnished for construction purposes.

At the time of furnishing the supplies in question, Hale, Ayer & Co. took the notes of the railway company for the amount due them, and also received as collateral security 20 of the bonds of the said railway company, secured by mortgage upon what was known as the Pacific division of said railroad.

At the sale under the decree of foreclosure the entire line of railroad was purchased by the defendant herein, the Burlington, Cedar Rapids & Northern Railway Company.

Upon these facts several questions have been discussed by counsel, two of which only will be considered. These are—*First*, whether a mechanic's lien was waived by taking collateral security; *second*, whether the defendant, the Burlington, Cedar Rapids & Northern Railway Company, purchased the road with notice of the complainant's claim of a mechanic's lien.

A decision of the first question requires a construction of section 2129 of the Code of Iowa of 1873, which declares that "no person is entitled to a mechanic's lien who takes collateral security on the same

contract." This statute has been several times considered and construed by the supreme court of Iowa, whose ruling upon the question of its construction we are bound to follow. In several cases that court has held that the acceptance of promissory notes for work and labor performed or materials furnished in the erection of a building or other improvement will not divest the right of a party to a mechanic's lien, unless such is the agreement of the parties. *Bonsall* v. *Taylor*, 5 Iowa, 546; *Scott* v. *Ward*, 4 G. Greene, 112.

The taking of notes is not the taking of collateral security.

It has also been held that where a party has done work or furnished materials in erecting a building under a contract with the owner, he does not waive his lien upon such building by accepting the promise of a subsequent purchaser of the building, made in consideration of forbearance to sue, to pay for such work or materials. *Mervin* v. *Sherman*, 9 Iowa, 331.

The court in that case, per *Wright*, chief justice, defines the words "collateral security" to mean "either a separate obligation attached to the regular contract named, to guaranty its performance, or it may be the transfer of property or other contracts to insure the performance of the principal agreement; and in any event, the contract, promise, or property taken must have been intended and accepted as collateral security, before the lien could be said to be waived or defeated."

The latest case upon the subject is that of *Gilcrest* v. *Gottschalk*, 39 Iowa, 311, where it is held that the acceptance of a mortgage for the same debt upon the same property covered by a mechanic's lien is not the taking of collateral security, within the meaning of the statute, and will not divest a mechanic's lien, unless the lienholder evinces the intention to rely upon the new security rather than upon the lien.

The rule to be deduced from these authorities is that the holder of a claim for labor or materials for a building, erection, or improvement upon land, does not waive his right to a mechanic's lien by taking security upon the same contract and upon the same property, unless it appear affirmatively that it was his intention to look to such security, and not to his mechanic's lien. If, therefore, in the present case it is made to appear, either that the security afforded by the 20 Pacific-division bonds was not upon the same property sought to be subjected to the mechanic's lien, or that the complainants intended to and did rely upon the collateral security afforded by said bonds, in either case the mechanic's lien is waived.

There is testimony tending strongly to show that the complainants did intend to rely upon the security of said bonds; as, for example, the fact that they claimed under the bonds in the foreclosure suit, and received their proceeds in the form of stock in the new company under the decree of foreclosure. But, without dwelling upon this feature of the case, let us inquire whether the security taken was in fact upon the identical property which might have been held by the mechanic's lien.

It appears in evidence that the 20 bonds here referred to were secured by mortgage upon only a part of the railway, to-wit: That part known and designated as the Pacific division, being one of four divisions into which the entire railway was divided, and on each of which there was a separate mortgage. Now it does not appear upon what part of the lines the material furnished by complainants herein was used. It certainly cannot be claimed, under the evidence, that it was all used upon the Pacific division. No such claim is made. On the contrary, the complainants admit that they are unable to show into what part of the lines their material went, and they therefore claim a lien upon all the lines now run and operated by the defendant, the Burlington, Cedar Rapids & Northern Railway Company, including not only the Pacific division, but the main line, the Milwaukee extension, and the Muscatine division. It is manifest, therefore, that the security afforded by the 20 bonds of the Pacific division, secured as they were by mortgage upon that division alone, was not a security upon the identical property against which a lien is claimed.

But again, the statute provides for a mechanic's lien upon "the building, erection, or other improvement, including any work of internal improvement."

I suppose it would not be contended that under this statute the complainants could enforce a lien against the rolling stock of the railway for materials furnished or used in the construction of the roadway, and no part of which was used in the construction or repair of such rolling stock.

It has been held by the supreme court of Iowa, in the case of *Neilson* v. *Iowa Eastern R. Co.* 51 Iowa, 184, that the rolling stock of a railroad does not constitute a part of its real estate, and that a mechanic's lien upon a railroad does not embrace such property.

If this be a true construction of the statute, (and it is at all events a rule of decision for us,) it still further illustrates the correctness of the proposition above stated, to-wit: That the mortgage bonds, taken as collateral security, are a lien on different property from that upon

which the complainants might have asserted their mechanic's lien, for the mortgage securing the bonds covers and includes, so far as the Pacific division is concerned, "all the franchises, fuel, rolling stock, cars, engines, machinery, and appurtenances appertaining or belonging to said Pacific division," as well as coal stations, land stations, engine-houses, and other buildings.

It is quite apparent that a large proportion, at least, of the property here enumerated would not be subject to a mechanic's lien for iron and other materials used in the construction of the track.

We think it therefore quite clear that the taking of the bonds in question as collateral security was not equivalent to taking security upon the identical property upon which a mechanic's lien is sought to be enforced.

The second question is whether it appears from the evidence that the purchaser at the foreclosure sale, the Burlington, Cedar Rapids & Northern Railway Company, had notice that the complainants claimed a mechanic's lien upon the road.

They certainly had notice that the complainants held a claim against the old company, and that they were seeking to enforce it as against the earnings of the road in the hands of the receiver under their bill of intervention in the foreclosure cases; but I see nothing in the record of the foreclosure cases which would charge a purchaser at that sale with notice of a mechanic's lien, claimed or to be claimed by these complainants.

They certainly did not claim any such lien in their intervening petition, and in the agreed statement of facts filed in the foreclosure cases, it is distinctly stated, not only that the Pacific-division bonds above referred to have been taken as collateral security, but also that "no mechanic's lien is claimed." Counsel insist that this was simply an admission of what was apparent without it, that no mechanic's lien was claimed in that case. Even if we admit this, how can it be claimed that the filing of a petition claiming payment out of the earnings of the road, together with an admission that no mechanic's lien was claimed, was sufficient to give to the purchaser at the foreclosure sale notice that a mechanic's lien would or might be claimed? To give the record this construction would be to require the purchaser at the sale to anticipate that the claimants would fail in the end to secure their claim out of the earnings of the road, and would thereupon take measures to enforce their claim, or a part of it, under the mechanic's lien law.

I do not think that the purchaser was bound to anticipate all this. He was not bound to look beyond what appears upon the face of the record, and nothing appears there indicating any purpose on the part of the intervenors in that case to claim anything more than that which was claimed by them in their intervening petition.

I think it fair to say that the purchaser was authorized to assume that the claim of the intervenors was fully and completely set forth by them.

Without considering any of the other questions discussed by counsel, these considerations lead to the conclusion that the complainants are not entitled to a mechanic's lien as prayed.

The bill must therefore be dismissed.